**STATE of Missouri, Respondent,**

v.

**Allen R. TODD, Appellant.**

**No. KCD 28161.**

Missouri Court of Appeals, Kansas City District.

June 1, 1976.

McMullin, Wilson & Schwarz, Philip H. Schwarz, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Nanette Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from conviction by a jury as a second offender of robbery, first degree. Appellant questions the sufficiency of evidence and the refusal to give a tendered converse instruction. Affirmed.

Myron Kimber owned an apartment building in Kansas City, Missouri. On October 26, 1973, around 9:00 a. m., he and Arthur McGee went to the basement of the building to repair the hot water heater. They entered by an alley door and walked down seven to nine steps. They carried a hand flashlight and a 12-volt battery lantern with a lens that threw light up and to either side. These appliances, together with the open door, provided the light for the basement.

While Mr. McGee was repairing the heater, a black woman entered the basement, asking to look at an apartment. After Mr. Kimber said he was busy, the woman left but returned in a few minutes to get a card which Mr. Kimber had previously offered. A few minutes after the woman left the second time, Mr. McGee noticed that the doorway to the alley darkened. Looking up, he saw the same black woman enter again with two black men following. Mr.

McGee identified Allen Todd as the man immediately behind and to the side of the black woman, carrying a handgun.

At the time of the intrusion, Mr. Kimber was seated on the bottom step holding the flashlight for Mr. McGee who was squatting on his ankles parallel to the bottom step and to the right of Mr. Kimber. The lantern was on the bottom step next to Mr. Kimber. Mr. McGee and Mr. Kimber were ordered to lower their heads; both victims complied. A gun was placed at Mr. McGee's head by Allen Todd, and Mr. Kimber was asked how much money he had. Mr. Kimber answered that he had $200 which assailants took from Mr. Kimber's pocket. One of the robbers tried to extract Mr. McGee's billfold from his back pocket. To do so, the robber was required to "flatten" Mr. McGee. This caused Mr. McGee's head to turn and, at that time, he got another look at Allen Todd. As the robbers left, the lantern on the top step was kicked out. Mr. McGee again saw the face of Allen Todd as he backed up the stairs to leave. Mr. McGee saw Allen Todd's face "three times, to be exact, and at one time maybe for half a minute."

Mr. McGee stated that he gave the investigating police officer a description of his assailants. One of the males was about five feet ten or eleven inches and was nice looking, had a smooth face, nice clean haircut, clean shaven, and the other was taller and possibly thinner. The police report in evidence indicated only that Mr. McGee said the robbers were black.

Mr. McGee also testified that prior to the lineup at which he identified the appellant, he was shown several pictures by Detective Merl Hoffman. He did not recall being shown a photograph of Allen Todd at that time. The defense and the prosecution stipulated that if Detective Hoffman had been called to testify, he would state that prior to the lineup he showed Arthur McGee two photographs; one was of Allen Todd.

Allen Todd was convicted of robbery in the first degree of Arthur McGee and the court fixed his punishment at 12 years' imprisonment.

Appellant contends that his identification was not proved. He argues "that the testimony of McGee was so contradictory, and much of it so patently untrue, that the jury should not have been able to convict * * solely because McGee at one point * * * said that he identified [Todd] as the person, or one of the persons who robbed him." He asserts also that McGee's testimony was "incredible * * * and should have been regarded by the Trial Judge * * * as being unworthy of belief."

■ Robbery in the first degree is the felonious taking of property of another from his person, or in his presence, and against his will, by violence, or by putting him in fear of immediate injury to his person. § 560.120, RSMo 1969; State v. Wright, 476 S.W.2d 581 (Mo.1972). The State's evidence, considered favorably to the conviction, showed that Allen R. Todd held a handgun at Arthur McGee's head while a companion assaulted Mr. McGee and took a billfold from his pocket. Such was sufficient, under the authorities, to establish a prima facie case of robbery, first degree.

■ Appellant argues, nonetheless, that Arthur McGee's testimony should not have been considered in linking him to the crime.

Appellant's argument goes to the weight and believability of Mr. McGee's identification of Allen Todd, not to the submissibility of the case, and such matters were for the jury to resolve. State v. Williams, 515 S.W.2d 544 (Mo.1974); State v. Maxwell, 502 S.W.2d 382 (Mo.App.1973); State v. Graham, 527 S.W.2d 936 (Mo.App.1975). The jury heard and saw Mr. McGee, was exposed to the conflict between his testimony and the police report and the stipulated testimony of Officer Hoffman, and was made aware of the robbery scene. The jury resolved the issue of identification in those circumstances, and its determination is final. State v. Blewett, 507 S.W.2d 56 (Mo. App.1974).

Defendant offered, and the court refused, Instruction A:

"One of the issues in this case is whether the defendant was the perpetrator of the crime charged. The State has the burden of providing identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty."

Appellant contends the court erred in refusing Instruction A "for the reason that such * * * correctly stated the law * * * and served to converse the State's verdict directing instruction." He argues that to allow this case to go to the jury without his Instruction A on the issue of identity "which was the entire defense" would be to deny him a fair trial.

Appellant concedes that Instruction A is not in MAI–CR. The required form for the converse of a single element of the State's verdict-directing instruction is MAI–CR 3.02: "If you do not find and believe from the evidence beyond a reasonable doubt that [insert the single element to be negatived * * *], you must find the defendant not guilty * * * of _____." A converse instruction in the 3.00 series may be given by the court without a request; shall be given where applicable if requested in the manner provided; and whenever there is an MAI–CR instruction applicable under the law to the facts, the MAI–CR instruction shall be given to the exclusion of any other on the same subject. Rule 20.02, V.A.M.R.; *State v. Vernor,* 522 S.W.2d 312 (Mo.App.1975).

Under this rule the trial court is ordinarily required to give a requested converse instruction, and failure to do so is error. The rule does not apply, however, when the requested instruction is improper in form. *State v. Smith,* 515 S.W.2d 761 (Mo.App.1974). Instruction A does not conform to the form for converse submission required by Rule 20.02, and authorized by MAI–CR 3.02. It is also argumentative and confusing. *State v. Smith,* supra.

The form of Instruction A suggests that it derives from some of the federal appeals courts which have required a similar instruction to be given in cases which turn on the testimony of a single eyewitness. See, e. g., *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552 (1972); *United States v. Holley,* 502 F.2d 273 (4 Cir. 1974); *United States v. Hodges,* 515 F.2d 650 (7 Cir. 1975). Missouri, however, has, no such requirement and does not require an instruction on identification if that issue is covered by other instructions. *State v. Taggert,* 443 S.W.2d 168 (Mo.1969). Believability of an eyewitness is covered by MAI–CR 2.01, Instruction No. 1 in this case, and all verdict-directing instructions require the jury to find beyond a reasonable doubt that the defendant was the perpetrator of the crime. See, e. g., MAI–CR 7.62, as required and used in this case to submit the charge of robbery, first degree, by means of a dangerous and deadly weapon.

Judgment affirmed.

All concur.