**STATE of Missouri, Respondent,**

v.

**Gary Lee HAMELL, Appellant.**

No. 37816.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Oct. 18, 1977.

Motion for Rehearing and/or Transfer
Denied Jan. 18, 1978.

Application to Transfer Denied
March 13, 1978.

Timothy A. Braun, Public Defender, St. Charles, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Philip M. Koppe, Frank Murphy, Asst. Attys. Gen., Jefferson City, Ronald L. Boggs, Pros. Atty., G. Jeffrey Lockett, Asst. Pros. Atty., St. Charles, for respondent.

STEWART, Judge.

Defendant was convicted of robbery in the first degree by means of a dangerous and deadly weapon, § 560.120 RSMo 1969. He was sentenced to twenty-five years imprisonment in accordance with the jury verdict.

Defendant urges for reversal that the court erred: (1) in admitting evidence of the commission of an offense by defendant which was not charged in the information; (2) in failing to suppress defendant's confession because it was the product of police coercion; and (3) in giving a verdict directing instruction which was at variance with the charge of the information.

Defendant does not question the sufficiency of the evidence to sustain the verdict. A brief statement of the facts will suffice. On July 26, 1975, defendant and three other men entered the Burger Chef Restaurant in St. Charles. Defendant, who was wielding a sawed-off shotgun, vaulted the stainless steel serving counter. He shoved the shotgun against the side of the manager's head and ordered the manager toward the rear area. The other employees were herded to the rear, and the manager was then ordered to collect all money and jewelry from the cash register and the persons in the restaurant and put it into paper bags. After the money was collected the victims were ordered to lie on the floor. Defendant and the other robbers bolted the restaurant, entered an automobile and fled.

A patron of the restaurant who was in his vehicle on the parking lot recorded the license number of the getaway car. The license had been issued to defendant. The restaurant manager positively identified defendant. A palm print lifted from the stainless steel counter at the point where the gunman vaulted the counter was identified as that of defendant.

Other facts essential to our discussion of the issues will be set out as the issues arise.

This case comes to the writer on reassignment. Much of the opinion previously written is adopted and quoted herein.

"Appellant's first argument is that he was denied a fair and impartial trial when the trial court overruled his motion for a mistrial after the state presented, in the videotaped confession, evidence of another offense not charged. The part of the videotape at issue was:

"QUESTION: It looks like just one person driving the car? Just one person occupying the car I mean? ANSWER: Yes. QUESTION: Okay. Is this the first time you have ever done anything like this with Ben Davis? ANSWER: This is the second time. QUESTION: This is the second time? When was the first time? ANSWER: The first time was—." (At this point the videotape was stopped.)"

The prosecutor then said that a brief recess was necessary to pass over some portions of the tape not relevant to this case.

■ "Every error which might occur in the trial of a case does not necessarily require the granting of a mistrial. *State v. Camper*, 391 S.W.2d 926 (Mo.1965). The declaration of a mistrial has been described as a drastic remedy to be exercised 'only in extraordinary circumstances,' *State v. James*, 347 S.W.2d 211 (Mo.1961), or 'only when the incident is so grievous that the prejudicial effect can be removed no other way,' *State v. Camper*, 391 S.W.2d 926 (Mo. 1965). Because the declaration of a mistrial necessarily rests largely in the discretion of the trial court who observed the incident giving rise to the request for a mistrial and is in a better position than the appellate court to evaluate any prejudicial effect and the possibility of its removal short of mistrial, *State v. Pruitt*, 479 S.W.2d 785 (Mo. 1972) (En banc); *State v. Smith*, 431 S.W.2d 74, 83 (Mo.1968), the standard of review on appeal is whether as a matter of law the trial court abused its discretion in refusing to declare a mistrial. *State v. Seals*, 515 S.W.2d 481 (Mo.1974); *State v. Franklin*, 526 S.W.2d 86 (Mo.App.1975).

■ "Evidence of the commission of separate and distinct crimes is not admissible unless it is within one of the exceptions to establish (1) motive, (2) intent, (3) ab-

sence of mistake or accident, (4) common plan or scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or (5) identity of the person charged. *State v. Reese* [364 Mo. 1221], 274 S.W.2d 304, 307 (Mo.1954); *State v. Diamond*, 532 S.W.2d 873, 876 (Mo.App.1976); *State v. Fox*, 510 S.W.2d 832, 838 (Mo.App. 1974). Such evidence must be subjected to rigid scrutiny because of its tendency 'to raise a legally spurious presumption of guilt in the minds of jurors.' *State v. Reese*, supra. Evidence of prior crimes is particularly prejudicial in that it 'permit[s] the jury improperly to infer that because there were [other crimes and offenses] appellant must have committed the [specific crime] charged.' *State v. Hancock*, 451 S.W.2d 6, 9 (Mo.1970). The trial court must carefully balance 'on the one hand the actual need for such evidence, and on the other the degree to which a jury may be prejudiced against the defendant by hearing such evidence.' *State v. Burr*, 542 S.W.2d 527, 531 (Mo.App.1976).

"The challenged portion of the videotaped statement must be analyzed to determine if the prejudicial impact was sufficient to warrant the declaration of a mistrial. From the videotape excerpt in the record it is difficult to determine whether the question referred to another robbery, which would then clearly be inadmissible, or merely to the act itself (of driving so as to make it appear as if only one person was in the car). The context of this portion of the videotape is also impossible to determine from the record. The videotape itself had been identified as a confession. The trial court found the remarks in the videotape to be very generalized and offered to instruct the jury to disregard the remarks. Defense counsel refused the instruction, fearing that any further reference would only serve to accentuate its impact. The tape machine had been stopped as rapidly as possible by the operator and the prosecutor assured the trial court that there had been no deliberate attempt on the part of the state to refer to any unrelated offense.

■ "In view of the ambiguous context and character of the challenged reference, the decision of the trial court to refuse to declare a mistrial should be affirmed. The trial court was in a superior position to evaluate the prejudicial impact of this reference and determine whether a mistrial was warranted. The cases cited by appellant to support his position are all cases in which the prejudicial evidence admitted was of other *crimes* or *offenses*. When compared with these cases the reference in this case does appear generalized. In *State v. Lee*, 486 S.W.2d 412 (Mo.1972), the Missouri Supreme Court held that denial of a mistrial was reversible error where the prosecutor implicated the defendant in bombings and other criminal activities not charged in the indictment for first degree murder. In *State v. Mathis*, 375 S.W.2d 196 (Mo.1964), the Missouri Supreme Court held the admission of evidence of a nearby burglary in the trial of defendant for another burglary was prejudicial error and reversed the conviction. In *State v. Reese*, 274 S.W.2d 304 (Mo.1954), the Missouri Supreme Court reversed defendant's conviction for murder because evidence was admitted of a holdup not alleged in the information and which was not relevant on the issue of defendant's guilt. In *State v. Diamond*, 532 S.W.2d 873 (Mo.App.1976), admission of evidence concerning an earlier car theft in a trial for tampering with a motor vehicle without the owner's permission was held to be so prejudicial that a mistrial was required. In *State v. Burr*, 542 S.W.2d 527 (Mo.App.1976), evidence of a sale of speed was held to be prejudicial and reversible error in a conviction for sale of marijuana. Evidence of other crimes or offenses was also held to be erroneously admitted in *State v. Tillman*, 454 S.W.2d 923 (Mo.1970) (arrest for murder and robbery), *State v. Hancock*, 451 S.W.2d 6 (Mo.1970) (other thefts), *State v. Holbert*, 416 S.W.2d 129 (Mo.1967) (possession of other weapons than that charged), and *State v. Griffin*, 336 S.W.2d 364 (Mo.1960) (other crimes and offenses).

■ "Appellant also argued that the videotaped statement itself had a prejudicial effect on the jury in that the impact of appellant's adverse statement was magnified by the medium of videotape. While there has been popular recognition of the more powerful emotional impact of television (videotape) as compared with writing, McLuhan, The Medium is the Message, 125–28 (1967) the courts have approved the use of videotaped evidence. *Hendricks v. Swenson,* 456 F.2d 503 (8th Cir. 1972); *State v. Lindsey,* 507 S.W.2d 1 (Mo.1974); *State v. Hendricks,* 456 S.W.2d 11 (Mo. 1970); *State v. Lusk,* 452 S.W.2d 219 (Mo. 1970). In *State v. Lusk,* the Missouri Supreme Court held that the admission of a videotaped confession after proper foundation did not violate defendant's Fifth Amendment privilege against self-incrimination. The court drew an analogy between the use of videotape and the use of tape recordings, *State v. Perkins,* 355 Mo. 851, 198 S.W.2d 704 (1946), and motion pictures, e. g., *People v. Dabb,* 32 Cal.2d 491, 197 P.2d 1 (1948); *Commonwealth v. Roller,* 100 Pa.Super. 125 (1930); *Grant v. State,* 171 So.2d 361 (Fla.1965), cert. den. 384 U.S. 1014 [,86 S.Ct. 1933, 16 L.Ed.2d 1035] (1966). In *State v. Lindsey,* the Missouri Supreme Court specifically addressed the issue of the emotional impact of a videotaped statement made by defendant. The court stated that emotional impact related to the weight to be given to the evidence, not its admissibility, and that the rules governing the admissibility of such evidence should not be tied to the technology of the past. 507 S.W.2d at 3.

■ "Appellant also argued that the prejudicial impact of the videotape reference to appellant's criminal past was not mitigated by evidence of the availability of appellant's photograph from police agencies. 'Mugshots' are in themselves neutral and do not constitute evidence of prior crimes and offenses. *State v. Harris,* 534 S.W.2d 516 (Mo.App.1976). It is unnecessary to determine what the mitigating effect, if any, of 'mugshots' would be in this case since the challenged portion of the videotape does not refer to other crimes and offenses and thus not inadmissible as such."

The next point relied on by defendant reads:

"B. The trial court clearly abused its discretion by holding that defendant's confession was not a product of police coercion. Although the defendant's motion for a new trial neglects to raise this issue, the defendant suggests alternatively that the court review the trial court's decision without the harsher burden required by the Plain Error Rule, Mo.Sup. Ct.R. 27.20(c), since said omission was the result of ineffective assistance of counsel, or review the trial court's decision under the plain error rule, Mo.Sup.Ct.R. 27.-20(c)."

■ No reference was made to the admission of defendant's confession in the motion for new trial. An issue which is not presented to the trial court in a motion for new trial is not preserved for appellate review. *State v. Peterson,* 518 S.W.2d 1, 2[2–4] (Mo.1974).

■ Defendant acknowledges that no issue respecting defendant's video confession was preserved for our consideration in the motion for new trial. He asks that we review the ruling of the trial court respecting defendant's confession "[W]ithout the harsher burden required by the plain error rule, Mo.Sup.Ct.R. 27.20(c), since said omission was the result of ineffective assistance of counsel . . . " This issue as presented is novel. Ordinarily the question of ineffective assistance of counsel is not ripe for consideration on the appeal from the judgment of conviction. *State v. Nolan,* 499 S.W.2d 240 (Mo.App.1973).

In criminal cases, counsel have not, as yet, been deprived of the right to exercise their judgment in the representation of their clients. Counsel is not required to make an issue of every adverse ruling of the trial court. The transcript reveals that trial counsel vigorously and skillfully represented his client throughout the trial, especially with respect to the issue of defendant's statements which his client gave to the police officers.

Counsel filed a motion to suppress. Defendant's principal complaint was that he had been physically abused. Defendant was picked up at his home in St. Louis shortly after 1:00 P.M. on July 29, and was taken to St. Charles, Missouri, for questioning. Stops were made at the Sixth District police station in St. Louis and at the police station in Northwoods. He was read the "*Miranda* Rights" upon leaving the Sixth District. Defendant arrived at the St. Charles police department at about 4:00 P.M. and was questioned for about an hour and a half. During this interview defendant was advised of his "*Miranda* Rights" and signed a waiver. After this interview defendant was booked and taken to the holdover. Defendant was returned to the Detective Bureau about 10:30 or 11:00 P.M. while Davis, an accomplice of defendant, was being questioned. Defendant was asked only a few questions at this time; most of the questions were directed to Davis. Defendant remained there for about one-half hour and was then returned to the holdover for the night.

About 8:30 or 9:00 the following morning, defendant and Davis were taken to the sheriff's office for a lineup. The lineup was concluded in approximately an hour and a half and defendant was returned to the holdover. At 1:00 P.M. defendant was arraigned. Defendant was returned to the Detective Bureau some time between 2:00 and 2:30 P.M. for more questioning and at approximately 4:15 P.M. he orally implicated himself in the robbery. After that he was further questioned about other matters by a police officer from Frontenac. A videotape confession was made at about 8:30 P.M.

At the hearing on the motion to suppress, defendant testified that he was not mistreated at the initial interview on July 29. On the occasion of the second interrogation defendant's accomplice, Davis, was present. Defendant testified that when Det. Hughes asked if he knew Davis, Hughes threw him against the wall; that he also hit him in the chest. Defendant claimed that at the next interview he was beaten on the chest and beaten on the legs with "a little rubber hose with hooks on it" by an Officer Tullock; that he was snatched by the shirt which was torn; that his handcuffs were tightened so as to cut his wrists. He also stated that he was thrown on the floor and kicked in the back resulting in an abrasion or bruise to the back. He testified that he was beaten for two and a half or three hours and at the end of that time he told the police that he would tell them what they wanted to know.

Defendant also testified that he had received no food or nourishment of any kind from the time he was picked up until after the video taping.

Johnny Davis testified that he was being questioned in a room at the police station during the latter part of the evening of July 29, when defendant was brought in and hit in the chest by Officer Tullock.

He also testified that in the afternoon of July 30, when he was brought into the Detective Bureau, defendant was already there, sitting on a chair and his shirt was torn. Some time later, Davis stated that he saw Officer Tullock push defendant against the wall and hit him across the legs with a piece of rubber. Davis did not see anyone kick defendant. Davis testified that he saw the police give defendant a green shirt to replace the torn shirt defendant was wearing at that time. Davis, in subsequent testimony, stated that defendant was wearing the green shirt before noon.

Although the exhibit is not before us, it was stipulated that defendant could introduce evidence of a polygraph test obtained at defendant's request on this issue.

The expert, an employee of a private security firm, testified on the motion to suppress with respect to some answers given by Hamell concerning "allegations that were presented to [the expert]" contained in an exhibit 3. This exhibit has not been filed with us. It was the opinion of the witness, considering the test as a whole, that Hamell was telling the truth when he stated he was beaten by members of the St. Charles Police Department.

Each of the eight St. Charles police officers who were present at any time while petitioner was being questioned testified that they did not strike, push or threaten defendant; they did not see any conduct of that nature on the part of any of the other officers of the department who were present. They knew nothing of defendant's shirt being torn and replaced. They did know that on the afternoon of the 30th he was not wearing the shirt he wore at the time he was picked up and which he had also worn at the lineup in the morning.

Officer Daleen, who was summoned to operate the video equipment, ordered sandwiches for defendant and the police officers while they were waiting for the video equipment to be arranged. Defendant ate a sandwich before the statement was recorded. These officers had no first hand information with respect to whether defendant had been fed before that time. They knew that three meals per day were served in the holdover.

Defendant had adequate opportunity for rest. He was in the holdover from early evening on July 29, until 10:30 or 11:00 P.M. and was returned around 11:00 or 11:30. He was taken to the lineup the next morning at 8:30 or 9:00 and returned to a cell until about 1:00 P.M. He was in his cell during two meal periods.

 Trial counsel, in his judgment, could well believe that the trial court had not erred when it found the statement to have been made voluntarily. When a statement is obtained from a suspect in custody, the burden is upon the State to prove by a preponderance of the evidence that the statement is voluntary. In meeting the burden, the State does not have to negate every possible circumstance which could present a fact issue. *State v. Nolan,* 423 S.W.2d 815, 818[5–9] (Mo.1968). We are also mindful that the court is the trier of

the facts. It is the trial court's prerogative to determine the credibility of the witnesses. *State v. Alewine,* 474 S.W.2d 848, 853[6–7] (Mo.1972).

Defendant testified that he was deprived of food from the time he was picked up until after the video statement was taken. There was no indication in the motion to suppress that this would be an issue. The officers who testified did not know whether defendant had been fed while he was in the holdover. They testified that prisoners were fed three times a day. Ordinarily they would not be given food during actual interrogation in the Detective Bureau. Defendant was in the holdover until 8:30 or 9:00 A.M. and during the lunch hour on the 30th of July. There was specific evidence that defendant was given food before he made the video statement. We also take note of the fact, from reading the testimony of the polygraph expert at the hearing on the motion at the trial, that this issue was not covered in the polygraph test. Under the circumstances the court was not required to believe defendant's testimony of this issue. It is also apparent that this was not the basis of defendant's objection to the admission of the statement. Defendant testified that the reasons he made the statement were because the police told him to and to stop the beating.[1]

There was conflicting evidence with respect to the question of whether defendant was physically mistreated. Although the State stipulated that the private polygraph expert could testify and express his opinion as to the truth or falsity of defendant's answers the trial court was not bound by the expert's opinion. The weight of the evidence was for the trier of the facts. *State v. Fields,* 434 S.W.2d 507, 515 (Mo. 1968). As stated before we have not been provided with the exhibit containing all of the questions asked by the expert and the answers of defendant.[2]

---

1. "Q. Now, the statements that you gave whether they be verbal statements to the police officers or a written statement or a video tape statement, why did you make those statements?

A. Because they was telling me to, and to stop from getting beat."

2. Some of the questions were in evidence before the jury:

There were discrepancies in the testimony of defendant in the pre-trial hearing and the polygraph test. Defendant's testimony attributed his bruised back to his treatment of the police but stated on the test that he received that injury prior to his arrest.[3]

The issue of the voluntariness of defendant's confession was also presented to the jury in the trial of the case. Defendant did not testify at the trial. The issue was developed through cross-examination and by the use of the polygraph expert and the jury declined to accept the opinion of the expert, as did the trial court.

The court in the pre-trial hearing and the jury at the trial viewed the video showing of the confession. We have also seen this videotape recording. Defendant appeared to be a person in full control of his faculties. He was articulate and displayed a better than average intelligence. He betrayed no hint of apprehension.

█ It would appear that there was no abuse of discretion on the part of the trial court when it found, under the totality of the circumstances, that the confession was voluntary. We cannot fault the judgment of counsel in excluding this issue from the motion for new trial, under the circumstances in this case.

Defendant also asks that we undertake to rule this point as plain error under Rule 27.20(c). We again feel that it is well to review the rule which reads:

"(c) Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

█ This rule permits our consideration of plain errors in our discretion, only when it appears that manifest injustice or miscarriage of justice has resulted. We take particular note of the phrasing "has resulted" rather than "could have resulted" or "may have resulted." Before we are entitled to consider a contention of error which has not been preserved we must believe that manifest injustice has in fact occurred. Merely speculative injury has no place in the plain error doctrine. See *State v. Caffey*, 457 S.W.2d 657[4–5] (Mo.1970). Such determination is made on a case by case basis after a review of all the facts and circumstances. *State v. Howard*, 540 S.W.2d 86, 87[1] (Mo. 1976).

█ In this case, defendant's guilt was established by overwhelming evidence. There was a positive identification, defendant's palm print was found on the counter

"A. (Mr. Mathews) On test one, 'Do you intend to lie to my questions about your treatment in the St. Charles Police Station?'
Q. What was his answer?
A. His answer was no.

· · · · ·

A. Number two, 'Did you lie when you said you were beaten up at the St. Charles Police Station?' His answer to that question was no.
Q. What was your opinion as to the answer of that question?
A. My opinion was the answer was truthful.

· · · · ·

A. Number three, 'At the St. Charles Police Station were you actually struck with rubber hose by any police officer?' The answer to that question was yes. My opinion was that that question was answered truthfully.

· · · · ·

A. Four, 'Were you punched in the chest by any policeman at the St. Charles Police Station?' The answer to that question was yes. The question was answered truthfully.

· · · · ·

A. Number five, 'Did any police officer kick you in the back at the St. Charles Police Station?' The answer to that question was yes. The question was answered truthfully.

· · · · ·

A. The next question was, 'Have you now told me the truth about your treatment at the St. Charles Police Station?' The answer to that question was yes, and the question was answered truthfully.

· · · · ·

A. 'Prior to your arrest for that Burger Chef holdup did you have that bruise on your back?'
Q. And the answer?
A. 'Yes.'
Q. And your opinion?

· · · · ·

A. In my opinion the question was answered truthfully."

3. See last question and answer set out in footnote 2.

at the point where he had vaulted over the counter and the get away car bore a license plate which was issued to defendant. Considering all the facts and circumstances no injustice or miscarriage of justice will result from an affirmance of this case. *State v. Caffey, supra.*

■ This issue should not be considered for yet another reason. The claim of error in the point is that, "[T]he trial court clearly abused its discretion by holding that defendant's confession was not a product of police coercion." This point does not state "wherein and why" the defendant contends the court was in error in its finding. This point is in violation of Rule 84.04(d). *State v. Flynn,* 541 S.W.2d 344, 349[12, 13] (Mo. App.1976).

Defendant next contends that the verdict directing instruction was erroneous because defendant was charged with the crime of attempted robbery. The instruction, however, was on robbery in the first degree.

■ The information clearly charges defendant with the completed crime of robbery in the first degree, it also charged defendant with attempted robbery.[4] The most that can be said for defendant's position is that the information is duplicitous a defect which is cured by verdict. *State v. Phelps,* 478 S.W.2d 304, 307[2–5] (Mo.1972). Finding no reversible error the judgment of conviction is affirmed.

Once more we wish to bring to the attention of the court reporters the provisions of § 485.090, which reads in part: "For all transcripts of testimony given . . . in any circuit court . . . the court reporter shall receive the sum of seventy cents per twenty-five line page for the original of the transcript, and the sum of twenty cents per twenty-five line page for each

carbon copy thereof;" The transcript in this case violates the legal page requirements at least 18 times. Each order entry and instruction begins on a new page and no other entry appears on the page no matter how short the initial entry. *County of St. Charles v. Rolling,* 537 S.W.2d 806 (Mo.App.1976). As said in *Kirtz v. Grossman,* 463 S.W.2d 541, 545 (Mo.App.1971), "Exacting excessive fees by a public officer is illegal (558, 140)." *Osborne v. Goodman,* 289 S.W.2d 68 (Mo.1956); see also, *State v. Jennings,* 555 S.W.2d 360 (Mo.App.1977). The reporter's certificate of costs of preparing the transcript is $434.50. The cost of the transcript as taxed by this court will be in the amount of $414.50. If payment for the transcript has been made the court is directed to order the court reporter to refund the sum of $20.00.

■ We also note that there was no issue raised in the motion for new trial or on appeal respecting the voir dire, the opening statements or the argument of counsel. These items in their entirety appear in the transcript. In this case the trial counsel ordered "a complete transcript of the trial . . . ." Counsel are admonished to order only those portions of the transcript necessary to the determination of the issues presented on appeal. The counties should not be required to bear the additional burden of transcripts containing useless material.

The judgment is affirmed.

REINHARD, J., concurs.

McMILLIAN, P. J., dissents in separate opinion.

McMILLIAN, Judge, dissenting.

I respectfully dissent to that portion of the majority opinion holding that appel-

---

4. "That GARY LEE HAMELL, in the County of St. Charles, State of Missouri, on the 26th day of July, 1975, did willfully, and unlawfully and feloniously, by means of a certain dangerous and deadly weapon, to-wit: Sawed-off shotgun, take, steal and carry away U.S. currency in the amount of $437.00 the personal property of Burger Chef, Inc., then and there in the lawful care and custody of Charles Stephen Shelton in fear of an immediate injury to his person and then and there did feloniously attempt to rob, take, steal and carry away the said money from the person of, in the presence of and against the will of the said Charles Stephen Shelton with the felonious intent to permanently deprive the owner of the use thereof and to convert the same to his own use, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

lant's confession was not a product of police coercion. The trial court, after a lengthy pretrial hearing on appellant's motion to suppress, found that the confession had been voluntarily made. Appellant continued his objection to the confession at trial, but did not include a challenge to the confession in his motion for a new trial. Although a claim of error not included in the motion for a new trial is not preserved for review, *e. g., State v. Gomillia,* 529 S.W.2d 892 (Mo.App.1975), the appellate court may invoke the plain error rule, Rule 27.20(c), V.A.M.R., "on a case to case basis . . . where substantial rights are affected whether or not the error is raised in the trial court or preserved for review, or defectively raised or preserved." *State v. Meiers,* 412 S.W.2d 478, 480 (Mo.1967). There must, however, be "a sound, substantial manifestation, a strong, clear showing, that injustice or miscarriage of justice will result if the rule is not invoked." *Id.* at 480–81. Mere allegation of constitutional error, even if proven, does not automatically satisfy this standard. *State v. Murphy,* 521 S.W.2d 22, 25 (Mo.App.1975); *State v. Harms,* 507 S.W.2d 29, 31 (Mo.App.1974). Allegations of manifest injustice or miscarriage of justice must be supported by some kind of factual showing. *State v. Graham,* 527 S.W.2d 936, 944 (Mo.App.1975).

Coerced confessions are inadmissible as evidence. Such confessions are inconsistent with the protections guaranteed by due process of law. U.S.Const. Amends. V, XIV; *Ashcraft v. Tennessee,* 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944); *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). The Fifth Amendment privilege against self-incrimination and "our accusatory system of criminal justice [demand] that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth." *Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966). The use of a defendant's coerced confession in a state criminal trial is forbidden by the Due Process Clause of the Fourteenth Amendment. *E. g., Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958). The ultimate test of the admissibility of a confession is one of voluntariness: "Is the confession the product of an essentially free and unconstrained choice by its maker?" *Culombe v. Connecticut,* 367 U.S. 568, 602, 80 S.Ct. 1604, 4 L.Ed.2d 1522 (1961); *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). Although physical brutality and violence used to extort confessions of course violate due process of law, threats of violence and duress also constitute coercion. *E. g., Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *Watts v. Indiana,* 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1950); *Lee v. Mississippi,* 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330 (1948); *Malinski v. New York,* 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945); *State v. Williams,* 369 S.W.2d 408, 418 (Mo.1963); *State v. Statler,* 331 S.W.2d 526, 530 (Mo.1960); *State v. Bradford,* 262 S.W.2d 584, 586 (Mo.1953). All factors are relevant in reviewing a claim that a confession was coerced including individual characteristics of the defendant, *State v. Bradford,* supra, and the surrounding circumstances, including the duration and conditions of detention, the manifest attitude of the police toward the defendant, defendant's physical and mental state, and any psychological pressures. *Culombe v. Connecticut,* 367 U.S. 568, 602, 80 S.Ct. 1604, 4 L.Ed.2d 1522 (1961).

Although the decision of the trial court should not lightly be overturned, the evidence presented by appellant, though admittedly not conclusive, *cf. State v. Lyle,* 511 S.W.2d 817, 818 (Mo.1974), does satisfy the standard of some kind of factual showing in support of an allegation of manifest injustice under the plain error rule, *State v. Graham,* 527 S.W.2d 936, 944 (Mo.App.1975), and requires reversal of appellant's conviction. Rule 27.20(c), V.A.M.R.; *e. g., State v. Butts,* 349 Mo. 213, 159 S.W.2d 790 (1942); *State v. Powell,* 266 Mo. 100, 180 S.W. 851 (1915). Such a decision is particularly justifiable in light of the rule that the state has the burden of proving by a pre-

ponderance of the evidence that a confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *State v. Nolan,* 423 S.W.2d 815 (Mo. 1968); *State v. Williams,* 369 S.W.2d 408 (Mo.1963).

Here, appellant testified at the pretrial hearing that during interrogation periods he had been beaten, kicked, beaten with a rubber hose, and threatened with more beatings if he did not confess by several police officers. Appellant's testimony was confirmed by a polygraphy examiner who testified that in his opinion appellant's allegations of police brutality were truthful. This polygraph test had been stipulated to by both the defense and prosecution. An eyewitness testified in support of appellant's account of the beatings by the police officers. Appellant had been physically injured and his shirt was ripped. In addition, appellant was not given anything to eat for approximately 31 hours (1:00 P.M. July 29 to 8:00 P.M., July 30).

On the other hand, the state called seven (7) police officers as witnesses, all of whom denied the allegations of coercion and were unable to explain appellant's claimed injuries or torn shirt. It is unrealistic to expect police officers in most coercion cases to admit to any kind of brutality. Interrogation is not conducted and confessions are not made in the open air but inside police stations. The United States Supreme Court has given special attention to the problem of the secrecy of interrogation rooms, "the admissibility of statements obtained from an individual who is subjected to custodial police interrogation and the necessity for procedures which assure that the individual is accorded his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself." *Miranda v. Arizona,* 384 U.S. 436, 439, 86 S.Ct. 1602, 1609, 16 L.Ed.2d 694 (1966); *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Confessions which are the result of coercion are fundamentally inconsistent with the individual's privilege against self-incrimination and the due process of law and were recognized as such long before the procedural safeguards of *Miran-*

da were laid down, e. g., *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). The continued use by the police of physical and mental coercion and the necessity for some limitation on custodial interrogation were of principal concern to the Supreme court in the landmark *Miranda* decision. *Miranda v. Arizona,* 384 U.S. 436, 447, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The present case emphasizes the task of the courts to closely examine the voluntariness of a confession and to reverse convictions where the state has failed to satisfy its burden of proof that the confession was in fact voluntarily made.

Although the court and the jury found, after considering conflicting testimony, that defendant's admissions were voluntary, not in all instances are we required to defer to their findings. I accept, without question, the general rule that where either a conviction or a particular finding has been resolved by the court based on conflicting evidence neither will be disturbed on appeal, where there is sufficient evidence to sustain it. See *State v. Woodard,* 499 S.W.2d 553, 556 (Mo.App.1973); *State v. Wheaton,* 221 S.W. 26 (Mo.1920). Here, for reasons I shall develop, I reject the jury's finding that the admissions herein were voluntary and find them to be the product of compulsion.

Indicative of the careful scrutiny appellate courts give to cases wherein a trial court has found a confession to have been freely given are the cases of *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936); *Chambers v. Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940); and *Ashcraft v. Tennessee,* 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944).

In *Brown,* the trial court determined that the confessions of the defendants, who were charged with murder, were voluntary. Nonetheless, the court rejected the trial court's findings and found upon its own review of the evidence that the confessions were the product of compulsion. This for the reason that the uncontradicted testimony supplied by the defendants and a deputy

revealed that the defendants had been severely beaten. Consequently, while Brown cannot be cited to authorize an appellate court to disregard a trial court's findings based upon conflicting testimony, yet it does illustrate that under certain circumstances an appellate court does have the independent power to conduct its own review of the evidence and to throw out the findings of a trial court jury on an issue of voluntariness.

In *Chambers,* several defendants, who were ignorant, tenant farmers, were charged and convicted of murder based upon confessions which the trial court had found to be voluntary. Unlike *Brown,* in *Chambers* there was a disagreement and a conflict in the testimony as to whether threats had been made and violence had been used on the defendants. Nonetheless, the court, as in *Brown,* found that uncontradicted evidence showed: (1) that defendants had been questioned steadily over a period of five days; (2) that the circumstances surrounding their confinement and their questioning without any formal charges having been brought, were such as to fill the defendants with terror and frightful misgivings—*Chambers,* 309 U.S. p. 239, 60 S.Ct. 472. Equally important, I note that the State of Florida challenged the court's jurisdiction "to look behind the judgments below claiming that the issues of fact upon which petitioners base their claim that due process was denied them have been finally determined because passed upon by a jury. . . ." *Chambers,* at p. 228, 60 S.Ct. at p. 473. In answer to this challenge, the court replied that it is not concluded by the findings of a jury that the confession by one convicted in a state court of murder was voluntary, but determines the question itself from the evidence. *Chambers,* at p. 229, 60 S.Ct. 472.

In *Ashcraft v. Tennessee,* supra, where the defendant was charged as an accomplice to the murder of his wife, the Supreme Court again reversed the conviction, after finding that the confession was coerced, rather than voluntary, as determined by the jury. Here, too, there was some contradictory evidence as to whether the defendant had been beaten, given food, allowed to use the lavatory during the 36 hours he was questioned, as well as the type of questioning he was subjected to, and what kind of physical condition he was in after his interrogation. In spite of these contradictions in the evidence, the court found the uncontradicted evidence that Ashcraft was held incommunicado for 36 hours without sleep or rest and was questioned continually by relays of officers and investigators, sufficient to prove that his confession was coerced.

In all of the above cases, the Supreme Court refused to accept the lower court's findings of fact that the confessions were voluntary. In each case there was other evidence that was uncontradicted, undisputed evidence relied upon by the Supreme Court that the defendant had been beaten, or subjected to questioning in intimidating circumstances for prolonged periods of time. Here, in the instant case, the evidence is uncontradicted: (1) that defendant was held for 31 hours without food or nourishment; (2) was questioned for approximately 16 hours before a formal charge was made; (3) that defendant was without friends, family, or counsel during the time he was being held; and (4) that the police had no explanation as to why they had furnished him with a shirt different from the one he wore when arrested and defendant testified had been torn while he was being beaten. Granted, there are contradictions in the testimony as to whether violence was used on the defendant while in custody; however, the mere fact that some of the evidence is contradictory does not mean that the court is *"bound"* to accept the jury's findings. *Chambers v. Florida,* supra, and *Ashcraft v. Tenn.,* supra. Even assuming that this contradictory evidence is in favor of the state, and no violence was used on the defendant, I still find as a matter of law that because the defendant was held for 31 hours without food or nourishment and questioned for a period off and on for 16 hours that his resulting statement was the product of compulsion.

This case closely resembles *Ashcraft.* In *Ashcraft,* there was contradictory evidence as to whether violence had been used but uncontradicted evidence that Ashcraft was held and questioned for 36 hours. In this case we have contradictory evidence as to whether the defendant was beaten but uncontradicted evidence that he was held for 31 hours without food or nourishment and questioned for 16 hours before formal charges were made. In both cases, the "coercive force" of the situation is brought to bear against a lone suspect. *Ashcraft v. Tennessee,* supra.

Therefore, while I acknowledge the general rule that a conviction based on conflicting evidence will not be disturbed on appeal, I reject it in this case because from my own independent findings there are other circumstances which show as a matter of law that the purported statement resulted from compulsion. In no way in my decision do I consider the consensual, uncontroverted results of the polygraph in my final conclusion, because I recognize that the court had the right to believe or disbelieve this evidence. Yet, on the other hand, the uncontradicted results of the polygraph testified to by a respected, qualified examiner,[1] does give some validity to my conclusion that some mischief was afoot.

Finally, I call to the attention of my colleagues an admonition given by Simeone, C. J. Judge Simeone noted that the courts stand as the last buffer of protection between police tyranny and the individual rights of all of our citizens. Today more so than ever, our news media report countless charges of confrontation of police misconduct in their dealing with our citizenry. In a majority of the instances where charges are made, we, the court, because of the high regard we hold for our police department resolve these disputes in favor of the police. We do this not because the police are infallible, but because in most instances we have a one-against-one swearing contest between the police and the accused. Consequently, absent any evidence to the contrary, we presume our police to be acting in good faith and thus support their version. In this case, however, such is not the case. Here we have one of those rare instances wherein not only are there other witnesses to the dispute but also a substantiation of the charges by credible scientific testing as related to the court by a highly respected polygrapher.

For the reasons given herein, I find the purported admissions to be the product of police coercion; and, accordingly, I would reverse and remand the cause for a new trial.

1. Mr. Warren Pierre Mathews, the polygraph examiner, graduated from the University of Illinois School of Engineering. Afterward he was employed by the Central Intelligence Agency where he was first introduced to the field of polygraphy. Later he graduated from Zahn Institute of Polygraphy, a training institution for examiners of law enforcement and commercial agencies. Mr. Mathews had made court appearances for defendants as well as for the state. His present employment is with Wells Fargo, a security agency.