**STATE of Missouri, Respondent,**

v.

**Stanley BECTON, Appellant.**

**No. 60187.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 24, 1992.

Mary–Louise Moran, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Stanley Becton, appeals from his jury trial conviction in the Circuit Court of the City of St. Louis of one count of possession of heroin, RSMo § 195.202 (Supp.1989), for which he was sentenced to seven years' imprisonment as a prior offender. We affirm.

The undisputed facts in this case establish that on March 8, 1990, at approximately 3:00 p.m., undercover Detectives Richard Weiser and Loren Slayton were conducting a surveillance of the area near 2947 Thomas Street in the City of St. Louis. The detectives were looking for evidence of narcotics activity pursuant to several complaints the police had received regarding drug sales in that area during the previous week.

Shortly after 3:00 p.m., the officers saw two men conversing in a vacant lot near the rear of 2947 Thomas. One of the individuals was later identified as appellant; the other was a young black male. During their observation, the detectives saw appellant hand the other man what appeared to be money, and appellant was given something in return. Suspecting that a narcotics sale had transpired, the detectives pulled their unmarked car closer to the scene. Both officers exited the vehicle and Officer Weiser approached appellant. The officer observed appellant put both hands into his pockets and then bring them up to his mouth. Officer Weiser reached out and grabbed appellant's wrists, at which time the detective noticed a plastic bag in appellant's hand containing pink and clear capsules.

A struggle ensued, and Officer Weiser and appellant fell to the ground. With the help of Detective Slayton, the officers were able to pull appellant's hand from his

mouth and retrieve the bag of capsules. The detectives noted the bag contained three intact capsules and one crushed capsule exposing a powdery substance. Tests later revealed the capsules contained heroin.

Appellant was found guilty by a jury of possession of heroin and sentenced to seven years' imprisonment as a prior offender. This appeal followed.

■ In appellant's first of four points, he contends the trial court erred in overruling his motion to suppress the capsules seized during the encounter. Appellant asserts that at the time of the arrest the officers had no probable cause for the arrest, said arrest was therefore unlawful, and the confiscated capsules were, thus, fruit of the unlawful arrest.

■ In reviewing a trial court's ruling on a motion to suppress, we will view all facts and reasonable inferences favorably to the order challenged and may disregard all evidence and inferences to the contrary. *State v. Smith*, 812 S.W.2d 225, 226 (Mo. App., E.D.1991). If there is sufficient evidence to sustain the findings of the trial court, we are to affirm the ruling on a motion to suppress. *Id.*

The evidence adduced at trial establishes that Officers Weiser and Slayton were conducting a narcotics surveillance near 2947 Thomas at 3:00 p.m. on the date in question. This surveillance was established due to various complaints received by the police department as to drug transactions occurring in that area. The officers observed appellant hand another individual some money and receive something in return. The two men then separated.

Probable cause for arrest exists where there are facts and circumstances within the officer's knowledge based on trustworthy and reliable information, and which would cause a reasonably cautious individual to believe the arrested person had committed the offense for which he had been placed in custody. *Id.* at 227. The facts, as stated above, satisfy the probable cause requirement needed to justify the arrest. The officers were in the area on surveillance watching for just this sort of transaction to occur. The officers had received complaints of drug trafficking in the area. The actions of the two individuals were sufficient to arouse suspicion. The officers had probable cause to arrest appellant. Because the arrest was proper, the resulting search and seizure were also acceptable. *See State v. Vitale*, 801 S.W.2d 451, 454 (Mo.App., E.D.1990). Therefore, the trial court was justified in denying appellant's motion to suppress. Point denied.

■ Appellant's next two points on appeal assert the trial court erred in suggesting that certain potential jurors may be removed for cause, and then sustaining the State's motion for removal of these same jurors. Specifically, appellant claims error regarding jurors Crown and Lee.

During voir dire, Mrs. Crown indicated that some of her neighbors had been arrested for drug dealing a few years past. She also established that this incident would not affect her in the case at hand. A short time later, Mrs. Crown requested the opportunity to approach the bench. She informed the court that a year and a half before she had been brought up on felony charges which were later reduced to misdemeanors. Upon questioning, Mrs. Crown indicated:

VENIREMAN CROWN: Basically, I'm okay. It's just when you mention policemen . . .

I can be objective. That's no problem. If anything, it's going to take a lot to convince me, I mean, a lot of evidence. Because I know that a lot of times, there is more that underlies the fact that we don't get to hear in court . . .

It makes me, I guess, a person that really needs to be proved . . .

I mean, if it's cut and dried, I'm fine, but if it's like a first offense, if it's, I don't know, I'd still have to go by the fact I'd be thinking twice about anything . . . I'm wondering if it's not been long enough for me to detach.

MR. VINCENT: Okay. I just noticed that you were crying when you started talking to the Judge. Was it a very traumatic experience for you?

VENIREMAN CROWN: Slightly. I mean, I was in the news and papers and everything ...

MR. THOMAS: ... Do you think that experience will be so devastating to the extent you really couldn't concentrate?

VENIREMAN CROWN: That's what I'm not sure of.

MR. THOMAS: And if that's the case, then you really would not be able to observe and see what's going on and—

VENIREMAN CROWN: Yeah. I'm a very objective detailed person usually. But then—and I thought that I would be that way, but when you mentioned policemen—...

THE COURT: ... Are you saying you might not be able to follow that instruction on reasonable doubt, that you might expect more?

VENIREMAN CROWN: No, I don't think so. I could be objective. I'm just wondering if I can think without my past experiences, you know, on anything....

MR. VINCENT: And your past experiences might effect you in this case?

VENIREMAN CROWN: Only if I would just get the knot in my stomach or something, I don't. I think I would be a good juror. It's just that it is so close, you know. It's been—I'm still on probation.

Upon Juror Crown's dismissal from the bench, the following discussion was had:

THE COURT: ... I think that this lady would try to do this ... I think this lady will not be able to make it. Now, that's my opinion. Again, others may disagree with me. Unfortunately, they're not here to see her. This lady was crying and I think she was crying because she had to tell about it. But she was originally charged with four felony issues. She pled guilty to misdemeanor. She's on probation. You have six preemptory challenges, but if you make it for cause, I will sustain it ...

MR. VINCENT: And your Honor, I just think what she went through, you know, I'm not sure if I'm sure she's going to try to do the best of her ability to do what she has to do, but I think it's a traumatic impact on her to come into a criminal court and sit on a jury. Just by looking at her, she's in tears and she has a Kleenex and it's too traumatic for her to be on this jury.

THE COURT: There is the possibility that she would pull that down in the jury room. I don't know if she would start cyring [sic] and all that, but that's not the reason we're striking her. I think she will require proof that's beyond—if you make the motion, don't make a motion and in the same breath make a reversal.

MR. VINCENT: Well, motion to strike for cause.

THE COURT: Are you sure?

MR. VINCENT: Yes.

THE COURT: For the record, the lady did seem to be sincere, but she's so emotional about this, that I don't think she'll truly be guided by the instructions. I want the record to show that she was crying and this lady is a white lady ... I will sustain the State's motion to strike her for cause.

Regarding Juror Lee, the following transpired among the judge, juror, and attorneys:

VENIREMAN LEE: Well, an incident happened to me about four months ago. Four months ago, I was driving down the street, and the officer turned on his lights. So basically, he lied and said that I had ran a stop sign. Then, he came into the deal of well, get out of the car, let me search your car. And I was asking why point blank, why are you searching my car? You told me I ran a stop sign. So what's your grounds? Then he was saying illegal substance.

Basically, that's what he told me he was searching for. So he called in another unit, and I told the other unit exactly what had happened, and they laughed, basically saying, you need to talk to somebody else about this. And after the whole incident, the guy changed his story, then gave me a ticket saying that I failed to yield a stop sign ...

MR. VINCENT: Is that going to affect you at all in this case?

VENIREMAN LEE: It might ... Put it this way, I keep an open mind to a certain extent ...

MR. THOMAS: You had an experience about four months ago, Mr. Lee, and a rather unfavorable one?

VENIREMAN LEE: Yes.

MR. THOMAS: Do you think that in light of that experience—there will be police officers testify in this case—that you will be able to hear their testimony and be fair and impartial to them?

VENIREMAN LEE: I'll be fair regardless ... Point blank, okay, I will look at the evidence and you know make a judgment. I wouldn't exactly prejudge because of my experience that, oh, yes, they're lying about everything ... It's just if you got that particular officer, then it probably would affect me, that particular officer. But other than that, no ...

At the conclusion of this line of questioning, the court indicated:

THE COURT: For the record, I don't believe this guy just now. I'm going by his demeanor. He—if you make the motion, I'll sustain it. And he's made all the right answers here. If you make the motion, I'll sustain it. It's your lawsuit. But I don't believe what he said right now, his hands on his hips, his head cocked to the side. However, bearing in mind that you have six preemptory strikes, tell me what you want to do.

MR. VINCENT: Well, your Honor, you know, looking at the defendant being a black male and him being a black male and that he was in a position where an officer was looking for drugs and this is a drug case and he felt he was treated unfairly by the police officer in the case, which was a white police officer, I think it's too close of a call for me not to make a motion. I mean, I can see him getting back there and saying that happened to me. I thought I could be fair and impartial. So I will make a motion to strike for cause ...

THE COURT: Well, the record will speak for itself as to what he said in the courtroom. I can't quote him, but I recall the things that he said. And I had written on my notes, which I rarely do, but I had written cause already because I think he established it before he ever came up here. When he approached, he was answering to Mr. Thomas. His hands were on his hips, his head was cocked to the side, his whole demeanor and body language gave the Court the impression that he was not telling the truth at this time, that he was saying what he thought he ought to be saying to get on this jury ... And I'm going to, if Mr. Vincent wants, makes the motion based on what I feel, I'm going to sustain it. I realize that the words that he said would rehabilitate him in the eyes of some, but the people that read this transcript will not have been here to see him and everybody has made their record. I will sustain the motion.

 In evaluating these types of claims on appeal, it is important to note "[t]he trial court possesses broad discretion in determining the qualifications of prospective jurors, and its ruling on a challenge for cause will not be disturbed on appeal unless it constitutes a clear abuse of discretion and a real probability of injury to the complaining party." *State v. Six*, 805 S.W.2d 159, 165 (Mo. banc 1991). Additionally, when the appellant is claiming error for the striking of a juror, the appellant is not entitled to relief unless he can show that the jury empaneled was not impartial. *State v. V_____ C_____*, 734 S.W.2d 837, 846 (Mo.App., S.D.1987). Finally, it is established that the trial court is in the best position to determine the impartiality of the jurors; therefore, doubts as to its findings will be resolved in favor of the trial court. *State v. Walton*, 796 S.W.2d 374, 378 (Mo. banc 1990). Appellant here has failed to show that there was an "abuse of discretion" or lack of impartiality of the empaneled jury.

 Although the court acknowledged that the two questionable jurors had moved in the direction of rehabilitating themselves, the court found that the demeanor of both was persuasive in causing the court to sustain the motions to strike for cause.

The court was convinced, based upon the comments and actions of the two panel members, that both would have difficulty remaining impartial and following the instructions of the court. Where the court's decision to sustain a motion to strike is based on the demeanor of the panel member and what he says, we defer to the decision of the trial court. *State v. Owens,* 759 S.W.2d 73, 76 (Mo.App., S.D.1988); *see also State v. Young,* 701 S.W.2d 490, 496 (Mo.App., E.D.1985). Point denied.

■ In his final point on appeal, appellant argues the trial court committed reversible error by allowing respondent to impeach appellant with details of a previous conviction. Appellant contends the State recited incorrect information regarding the prior conviction and the court erred by not attempting to cure the resulting prejudice. However, appellant failed to raise this issue in his motion for a new trial.

■ Before we may consider an assertion of error not properly preserved, we must first believe manifest injustice has, in fact, occurred. *State v. Woodland,* 768 S.W.2d 617, 618 (Mo.App., E.D.1989); *State v. Hamell,* 561 S.W.2d 357, 364 (Mo.App., S.L.D.1977). This determination must be made on a case by case basis. *Hamell,* 561 S.W.2d at 364.

Here, we find the evidence of appellant's guilt so overwhelming that we do not believe injustice sufficient to find plain error has occurred. Two detectives, conducting surveillance pursuant to complaints received regarding drug deals transpiring in that particular area, observed what they suspected to be a narcotics transaction. One of the officers immediately approached appellant and, after a struggle, was able to extract a plastic bag of capsules from appellant's hand. These capsules were tested and found to contain heroin. Based on the extent of evidence indicating appellant's guilt, we find no manifest injustice requiring plain error review. Point denied.

Based on the foregoing, the decision of the trial court is affirmed.

SMITH, J., and BLACKMAR, Senior Judge, concur.